# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3431 | **DATE** | 10/21/2003 |
| **CASE TITLE** | Jeremy Nixon vs. Arrow Financial Services | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons given in this opinion, Arrow's motion for summary judgment is granted and this action is dismissed. (11-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

| SN | courtroom deputy's initials |
|---|---|

number of notices

OCT 2 3 2003

date docketed

15

docketing deputy initials

10/21/2003

date mailed notice

SN

mailing deputy initials

**Document Number**

17

U.S. DISTRICT COURT
CLERK
03 OCT 22 PM 12:32
FILED
Date/time received in central Clerk's Office

JEREMY NIXON,  )
             )
    Plaintiff,  )
             )
    v.       )        No.  02 C 3431
             )
ARROW FINANCIAL SERVICES,  )
             )
    Defendant.  )

**DOCKETED**

OCT 2 3 2003

## MEMORANDUM OPINION AND ORDER

Jeremy Nixon ("Nixon") brings this action against Arrow

Financial Services ("Arrow") under the Fair Debt Collection

Practices Act ("Act," 15 U.S.C. §§1692-1692o[1]).  Nixon alleges

that Arrow (1) failed to send him a valid notice of debt as

required under Section 1692g(a) and (2) unlawfully ignored his

written request for validation, contravening Section 1692g(b).

Arrow has moved for summary judgment on both counts, and both

sides have complied with this District Court's LR 56.1.[2]  For the

reasons given in this opinion, Arrow's motion is granted and this

action is dismissed.

### Summary Judgment Standards

Familiar Rule 56 principles impose on movant Arrow the

---

[1]  Further citations to the Act will take the form
"Section –."

[2]  This opinion refers to Arrow's LR 56.1(a)(3) statement as
"A. St. ¶ --" and to Nixon's LR 56.1(b)(3) response as "N. Resp.
¶ --," but the latter is cited only where Nixon controverts
Arrow's version of the facts.  "A. Ex." refers to Arrow's
exhibits.

burden of establishing the lack of a genuine issue of material fact (<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986)). For that purpose this Court must "read[ ] the record in the light most favorable to the non-moving party," although it "is not required to draw unreasonable inferences from the evidence (<u>St. Louis N. Joint Venture v. P & L Enters., Inc.</u>, 116 F.3d 262, 265 n.2 (7th Cir. 1997). <u>Pugh v. City of Attica</u>, 259 F.3d 619, 625 (7th Cir. 2001) has echoed the teachings of <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986):

> A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

While this Court accepts nonmovant Nixon's record-supported version of any disputed fact, neither "the mere existence of some factual dispute between the parties" (<u>Anderson</u>, 477 U.S. at 247) nor the existence of "some metaphysical doubt as to the material facts" (<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)) will defeat a summary judgment motion.

## <u>Background</u>[3]

Nixon opened a credit account with J.C. Penney in 1991, and over time he became indebted to that retailer for approximately $1,000 (A. St. ¶¶16, 17, 24). For some undisclosed reason he stopped making payments on the account in 1997. After J.C.

---

[3] This background account is culled from the parties' LR 56.1 submissions in the manner stated in the preceding section.

Penney made several attempts of its own to collect the money it was owed, it sold the debt to Arrow in March 2001 (id. ¶¶19, 20, 25). Arrow then submitted an electronic request to its outside print-and-mail service on March 29, 2001 to print and send an initial communication letter to Nixon's home address informing him that Arrow now owned the debt and providing him with certain disclosures required by law (id. ¶¶29). Consistent with its standard practice, Arrow did not itself receive a copy of the form letter, but the outside service did confirm electronically that it delivered the letter to the post office the next day (id. ¶26; Brian Cutler ("Cutler") Aff. ¶5[4]).

Nixon denies that he ever got the initial communication letter and claims that he first heard of Arrow in February 2002, when its name suddenly appeared on his credit report (A. St. ¶34). On February 4, 2002 Nixon called Arrow and demanded an explanation, and after an Arrow representative explained that it had purchased the J.C. Penney debt, Nixon made payment arrangements with Arrow (id. ¶¶38, 39). Arrow then sent Nixon a letter stating the exact amount due and another letter outlining the agreed-upon payment arrangements (id. ¶¶46, 47). After Nixon made one payment in accordance with that arrangement, he changed

---

[4]  Cutler is Arrow's Executive Vice President and Chief Technology Officer. Exhibit B to Arrow's motion comprises Cutler's affidavit and its two attached exhibits, but for greater ease of identification this opinion refers to the affidavit in the form set out in the text, rather than citing "A. Ex. B."

his mind and wrote to Arrow on February 22, 2002 disputing the debt and demanding that Arrow cease all collection efforts until it provided verification of the debt (id. ¶¶49, 50; A. Ex. A 11).[5]

## Arrow's Initial Communication Letter

One question is at issue in the present motion: What really happened to the initial communication letter that Arrow claims was delivered to the post office on March 30, 2001? Nixon denies ever receiving the letter, and indeed he challenges that it was ever sent. After examining the record and arguments of both parties, this Court finds the dispute to be less a mystery than a matter of smoke and mirrors, for Nixon does not offer a single piece of real evidence that favors his version of events.

Section 1692g(a) requires a debt collector to send a written notice to the consumer--either together with its initial communication or within five days thereafter--containing several specific items, including a statement that the consumer has 30 days from receiving the notice to dispute the validity of the debt or the debt will be assumed valid by the debt collector. As

---

[5]   It is worth noting, and contains substantial elements of irony, that although Nixon's Complaint had alleged otherwise, he does not now dispute that he owes the money on the long-outstanding J.C. Penney account (his Dep. 17, 126). Instead he now says that he really wanted confirmation of Arrow's right to collect on that obligation (Dep. 126). But that was of course the necessary consequence of Arrow's having purchased the J.C. Penney obligation--and Nixon has expressly admitted that it did just that (A. St. and N. Resp. ¶25).

Nixon would have it, "the initial communication" took place on February 4, 2002 when he called Arrow and made arrangements to pay the debt. According to Nixon, Arrow violated Section 1692g(a) by failing to send proper written notice within five days of that phone call.

But Cutler swears (and Nixon has not controverted) that Arrow's electronic records for Nixon's account reflect Arrow's March 29, 2001 request for an initial communication letter to be sent to Nixon at his correct home address and that Arrow's print-and-mail service electronically confirmed that it delivered that letter to the post office the following day (Cutler Aff. ¶5). Nixon responds that the records Arrow kept for his account are unreliable because Arrow did not always follow its stated record-keeping practice of recording all telephone calls and written communications it receives from debtors. Specifically, Nixon points to two faxes that he says he sent to Arrow--one dated March 29 and another dated April 16, 2002[6]-that Arrow never recorded in connection with Nixon's account.

While Arrow has not provided any specific explanation of the absence of any notation about those faxes in Nixon's records,[7]

_____

[6] Nixon Mem. 10 says that he mailed (not faxed) the April 16 communication, but his own deposition testimony (Dep. 107) says otherwise.

[7] Arrow's attempt to do so suggests that it never received the faxes. But for summary judgment purposes this Court must accept Nixon's version in that respect.

that does not at all create an issue of fact as to whether the initial communication letter was sent. It is not reasonable to infer from any omitted reference to such incoming communications (something that would have required particularized action by some clerical person, to say nothing of the fact that faxed communications--by definition transmitted to a specific telephone number--may sometimes present extra problems in getting to the proper destination in an organization of any size) that the records Arrow kept as to its fully automated outgoing communications are unreliable.[8] Nixon does not claim that any of the entries that Arrow made for outgoing communications that he acknowledges receiving were inaccurate. More importantly, Nixon wholly fails to explain how the entries related to the initial communication letter could have been made unless that letter had actually been generated and delivered to the post office. As Nixon offers no evidence creating even a reasonable inference that the initial communication letter was not sent, the total absence of a genuine issue of fact in that respect causes his claim under Section 1692g(a) to fail as a matter of law.

That still leaves the question whether Nixon actually received the initial letter. Section 1692g(b) requires a debt collector to cease all debt collection activity if, within 30

---

[8] Both the Cutler Affidavit and its attached exhibits provide an ample explanation as to this opinion's use of the term "fully automated."

6

days after _receiving_ the initial communication letter, a consumer
notifies the debt collector in writing that he or she disputes
the debt.  Arrow contends that Nixon's letter sent February 22,
2002 disputing the debt fell far outside of the 30-day window, by
reason of the presumption that Nixon would have received the
letter shortly after its March 29, 2001 date, but in any event
long before January 24, 2002 (30 days before February 22).
Because Nixon denies receiving Arrow's initial communication
letter, so that his first contact with Arrow was assertedly the
phone call he placed to them on February 4, 2002, that would
place his February 22 letter within 30 days thereafter--and
hence, he says, Arrow had an asserted obligation to cease all
debt collection activity until it verified the debt.

    As Nixon recognizes, evidence that a letter was properly
addressed and deposited with the post office gives rise to a
rebuttable presumption that the addressee received the letter,
but a question of fact remains if the addressee specifically
denies receiving the letter (_In re Longardner & Assocs., Inc._,
855 F.2d 455, 459 (7th Cir. 1988); _Weisberg v. Handy & Harman_,
747 F.2d 416, 421 (7th Cir. 1984)).  But Nixon expends all of his
efforts in advancing the losing contention already discussed
(that a genuine issue exists whether the letter was sent in the
first place), and the only evidence he offers to challenge the
presumption is a statement at his Dep. 112 that he does not think

it is possible that he received the letter because he did not recognize Arrow's name when he saw it on his credit report.

If this Court were to find such an equivocation sufficient to overcome the presumption of receipt and thus to create a question of fact, that time-hallowed presumption (see, e.g., Rosenthal v. Walker, 111 U.S. 185, 193-94 (1884) and even older cases cited there) would lose all practical force and effect. This Court of course recognizes the difficulties inherent in any effort to prove a negative, so that courts should not demand too much lest the rebuttable presumption be converted into an irrebuttable one (cf. Barrs v. Lockheed Martin Corp., 287 F.3d 202, 211 & n.10 (1st Cir. 2002), criticizing Schikore v. BankAmerica Supplemental Ret. Plan, 269 F.3d 956, 964 (9th Cir. 2001) in that respect).

But in this instance Cutler Aff. ¶3 identifies the specific procedure under which "Arrow personnel monitor collection activity on each account and document any 'return to sender' letters on FACS[9] by recording the number of the form letter that was returned to Arrow and the date that such letter was returned to Arrow." So Arrow has provided not only proof of mailing but also evidence that the original letter--directed, it will be remembered, to Nixon's correct home address--was not returned.

---

[9] That acronym stands for Flexible Automated Collection System, a computerized collection tracking and filing software.

8

In those circumstances Nixon's "I don't think so" response--not at all a sworn denial of receipt of the letter (contrast <u>Jones v. Citibank, Fed. Sav. Bank</u>, 844 F. Supp. 437, 442 (N.D. Ill. 1994); <u>Vaden v. IndyMac Bank F.S.B.</u>, No. 02 C 1150, 2003 WL 22136306, at *5 (N.D. Ill. Sept. 16)) is insufficient to create a genuine issue of fact on that score either.

### Conclusion

Nixon has failed to demonstrate a material issue of fact on either of his claims, and Arrow is entitled to a judgment as a matter of law. This action is dismissed.

Milton I. Shadur
Senior United States District Judge

Date: October 21, 2003